IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JENNIFER PESSAGNO,

        Plaintiff,

  v.

        Civil Action No.
        3:12-CV-0319 (MAD/DEP)

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

        Defendant.

_____

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF:

LACHMAN, GORTON LAW FIRM       PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN       AMANDA J. LOCKSHIN, ESQ.
United States Attorney              Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

---

[1]     Plaintiff's complaint named Michael J. Astrue, who at the time of filing was Commissioner of Social Security, as the defendant. On February 14, 2013, Carolyn W. Colvin took office as Acting Commissioner of Social Security. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Jennifer Kathleen Pessagno, who suffers from both mental impairments, including affective and anxiety disorders, and a lumbar back physical condition, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of a determination by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments. In support of her challenge to that determination, plaintiff maintains that, although the administrative law judge ("ALJ") assigned to hear and determine the matter properly credited the findings of her treating pain specialist concerning her exertional limitations, when assessing plaintiff's ability to perform work-related functions he overlooked the physician's conclusions that, due to her pain, she would be moderately limited in concentration and the ability to sustain an appropriate work pace. Plaintiff argues that those limitations significantly reduce the range of jobs she is capable of performing, and that it was therefore inappropriate for the ALJ to rely upon the medical vocational guidelines set forth in the Commissioner's regulations ("grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, to determine the

issue of disability instead of eliciting the opinions of a vocational expert concerning her ability to perform available work.

For the reasons set forth below, I conclude that the ALJ's failure either to reject the portion of the treating physician's medical source statement regarding the effects of her pain upon plaintiff's ability to concentrate and work at an appropriate pace, and properly to explain his rationale for doing so, or to include the limitation in his residual functional capacity ("RFC") finding, constituted error and calls into question his use of the grids to determine the issue of disability. Accordingly, I recommend that the Commissioner's determination be vacated, and the matter remanded to the agency for further consideration.

I. BACKGROUND

Plaintiff was born in January 1974; she is five feet two and one-half inches tall, and weighs 163 pounds. Administrative Transcript at 64, 134, 138, 154.[2] Plaintiff lives in Binghamton, New York, together with her husband and brother-in-law. *Id.* at 64, 79. She possesses an associates degree from the Elmira Business Institute, and, at the time of the hearing

---

[2] Portions of the administrative transcript, which is comprised of a compilation of medical records and other evidence that was before the agency at the time the administrative determination in this matter was made, and was filed by the Commissioner on June 21, 2012, Dkt. No. 8, will hereinafter be cited as "AT ___".

in this matter, was taking on-line courses for between three and four hours each day in the field of medical transcription. *Id.* at 64, 81.

Plaintiff was last employed in April 2009 as an inventory specialist, a job that did not require plaintiff to lift anything, but did necessitate that she stand for more than one-half of each work day.  AT 64-65, 160. Prior to that, plaintiff was employed in a variety of positions, most of which were of short duration. *Id.* at 65-69, 160-61.

Plaintiff suffers from both mental and physical impairments.[3]  She has been diagnosed as suffering from bipolar disorder, depression, anxiety disorder, and post-traumatic stress disorder. AT 41, 75-76, 261. Plaintiff receives treatment for those conditions from Dr. Mariano Apacible, a staff psychiatrist, and Jill Van Pelt, a licensed clinical social worker, both of whom are employed at Broome County Community Mental Health Services.  *Id.* at 316-26. Plaintiff has been prescribed Fluoxetine, Lamotrigine, Abilify, Prozac and Lexapro for her mental health conditions. *Id.* at 79, 205, 316-26.

Plaintiff also suffers from scoliosis and the presence of some

---

[3] Although the Commissioner's decision addressed both her physical and mental conditions, AT 42, only plaintiff's physical impairment and its impact upon her ability to perform work-related functions are at issue in this action.  Plf.'s Brief (Dkt. No. 12) at 1.

osteoarthritis in her lower back. *Id.* at 69-70. Magnetic resonance imaging ("MRI") testing, conducted on April 9, 2010, of plaintiff's lumbar spine revealed "[v]ery small left posterolateral L2-3 and L4-5 disc protrusions[,]" but with "[n]o evidence of neural compression." *Id.* at 312. To address that condition plaintiff has treated with Dr. Xiao Fang, a pain specialist, who has prescribed the use of a TENS unit,[4] Ibuprofin, aquatic therapy and physical therapy.[5] *Id.* at 308-311.

II. PROCEDURAL HISTORY

    A. Proceedings Before the Agency

Plaintiff filed applications for SSI and DIB benefits with the agency in June 2009, alleging that she has been disabled since January 1, 2009. AT 54, 86-87, 134-39.[6] On August 24, 2010, a hearing was conducted before ALJ John P. Ramos to address plaintiff's applications for benefits. AT 61-

---

[4] A transcutaneous electrical nerve stimulation, or "TENS," unit uses electric current produced by a device to stimulate the nerves for therapeutic purposes. Nat'l Ctr. for Biotech. Info., *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Libr. of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055 (last visited July 27, 2013).

[5] At some point plaintiff was apparently taking Flexeril, but noted that it was not helping her condition. AT 309.

[6] Plaintiff's DIB application summary reflects that she became unable to work on January 1, 2009. AT 138. Her SSI summary application, however, claims a disability onset date of April 6, 2009. *Id.* at 134.

5

84. Following that hearing, at which plaintiff was represented by legal counsel, ALJ Ramos issued a decision on September 17, 2010, in which, after conducting a *de novo* review of the available evidence, he concluded that plaintiff was not disabled at the relevant times, and thus did not qualify for the benefits requested. AT 36-52.

In his decision, ALJ Ramos applied the familiar, five-step test for determining disability. AT 41-44. At step one, he concluded that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. *Id.* at 41. The ALJ next concluded that plaintiff suffers from several impairments, including affective disorder, anxiety disorder, and a back impairment, but that those impairments do not, either individually or in combination, meet or medically equal any of the listed, presumptively disabling impairments as set forth in the Commissioner's Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 41-42.

Before proceeding to step four of the disability protocol, ALJ Ramos surveyed the available evidence and concluded that, despite her impairments, plaintiff retains the ability to perform a full range of sedentary work. AT 43. ALJ Ramos found that this included "the ability to understand and follow simple instructions and directions, perform simple tasks with

supervision and independently, maintain attention and concentration to tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others, and handle reasonable levels of simple, repetitive work-related stress." *Id*. In arriving at that determination, the ALJ afforded "significant weight" to the conclusions of Dr. Fang, plaintiff's treating pain specialist as reported in a medical source statement. *Id.* at 46.

After determining at step four that plaintiff has no significant past relevant work history, ALJ Ramos then resorted to the grids at step five, concluding that, pursuant to Rule 201.27 thereof, a finding of not disabled was directed. AT 47. The ALJ's opinion became a final determination of the agency on January 26, 2012, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision. AT 26-28.

B. This Action

Plaintiff commenced this action on February 23, 2012. Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer to plaintiff's complaint on June 20, 2012, accompanied by an administrative transcript of the proceedings and evidence before the agency at the time

its decision was made. Dkt. Nos. 7, 8. With the filing of plaintiff's brief on October 18, 2012, Dkt. No. 12, and a brief on behalf of the Commissioner on December 26, 2012, Dkt. No. 14, this matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[7] *See also* Fed. R. Civ. P. 72(b).

III. DISCUSSION

    A. Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

---

[7] This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003. Under that General Order once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.

9

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be

considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* at §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* at §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id. at* §§ 404.1520(d), 416.920(d), Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Id.* at §§ 404.1520(d), 416.920(d); *see also Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Burgess*, 537 F.3d at 118; *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C. The Evidence in This Case

In his decision, ALJ Ramos refers to Dr. Fang as a treating source, and claims to have accorded his opinions regarding plaintiff's capacity to perform work-related functions "significant weight." AT 46. Plaintiff contends that, while the ALJ built his RFC finding around the exertional

limitations of Dr. Fang, he overlooked the non-exertional components of Dr. Fang's opinions, to the effect that given plaintiff's physical condition she can be expected to be moderately limited in concentration and the ability to maintain work pace. *Id.* at 314; Plf.'s Brief (Dkt. No. 12) at 4. Plaintiff contends that the ALJ's rejection of this portion of Dr. Fang's opinion is neither proper nor explained in his decision, and that the omission casts doubt upon the ALJ's RFC finding as well as his finding of no disability, which turns upon his RFC determination. Plf.'s Brief (Dkt. No. 12) at 4-5.

"With respect to the nature and severity of [a claimant's] impairment(s), the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[8] *Burgess*, 537 F.3d at 128 (internal quotations and

---

[8] The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] . . . in determining the weight to give the opinion.

14

alterations in original, citations omitted)*.* "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record*.*'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Veino,* 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the medical source has supported his or her opinion, (4) the degree of consistency between the opinion and the record as a whole, (5) whether the opinion is given by a specialist, and (6) other evidence which may be brought to the attention of the ALJ. 20 C.F.R. §§ 404.1527, 416.927. In addition, if the ALJ chooses to reject a treating physician's opinions, he must provide his reasons for

---

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ's failure to apply these legal standards when considering a treating physician's opinions constitutes a proper basis for reversal of his determination. *Johnson*, 817 F.2d at 986; *Barnett*, 13 F. Supp. 2d at 316-17.

In this instance, the ALJ's decision contains no explanation for accepting the portion of Dr. Fang's opinion directed at plaintiff's exertional limitations, while at the same time rejecting the portion of his assessment regarding the impact of plaintiff's condition on her capabilities in the areas of concentration and work pace. Indeed, the decision is conspicuously silent regarding that portion of the treating physician's assessment relating to non-exertional limitations. The ALJ's failure to explain the apparent rejection of that portion of Dr. Fang's opinions alone warrants reversal of the Commissioner's determination. *Burgin v. Astrue*, 348 F. App'x. 646, 648-49 (2d Cir. 2009).

The error in not addressing the portion of Dr. Fang's opinion concerning non-exertional limitations in his decision is compounded by the fact that the limitations expressed by Dr. Fang are not included within his RFC finding, nor were they taken into consideration when the ALJ relied upon the grids to determine the question of disability. AT 46. It is well-

established that the Commissioner can meet her burden in connection with the fifth step of the relevant disability test by utilizing the grids. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The grids take into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Rosa*, 168 F.3d at 78. Whether or not the grids should be applied in order to make a step five determination presents a case-specific inquiry that is heavily dependent on the particular circumstances involved. *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grids is appropriate. *Id*. If, on the other hand, nonexertional impairments, including pain, *significantly* limit the range of work permitted by exertional limitations, then use of the grids is inappropriate, in which case further evidence and/or testimony is required.[9] *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

---

[9] As one court has explained,

> A nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

The ALJ's decision in this case does not discuss whether Dr. Fang's opinions regarding plaintiff's non-exertional limitations result in erosion of the job base upon which the grids are predicated to such an extent that they are no longer useful in carrying the Commissioner's burden at step five of the sequential analysis. It is well-established that the presence of non-exertional limitations may in certain cases restrict the job base upon which the grids are predicated to it a point where they cannot be used at all, or at most only to provide guidance as a framework for determining disability, supplemented by the testimony of a vocational expert. *Bapp*, 802 F.2d at 804-05.

In this instance the ALJ's failure to factor the treating physician's opinions regarding plaintiff's non-exertional limitations into his RFC findings and either explain why they do not erode the job base upon which the grids are predicated or support the grids results with the testimony of a vocational expert fatally undermines the Commissioner's determination of no disability. The matter should therefore be remanded to the agency for further consideration of Dr. Fang's medical assessment in its totality and how, if at all, the non-exertional limitations expressed by Dr. Fang affect resort to the grids to determine disability at step five of the sequential

analysis.[10]

## IV. SUMMARY AND RECOMMENDATION

The ALJ's decision in this case purports to accept the opinions of Dr. Fang, as plaintiff's treating physician. Yet, that report discloses the presence of two non-exertional limitations stemming from plaintiff's physical impairment that are neither taken into consideration by the ALJ, nor even discussed in his decision. Under the circumstances, and based upon the potential impact of that failure on the ALJ's RFC finding and use of the grids to determine disability, I recommend that the decision be vacated, and the matter remanded for further consideration and explanation.

It is therefore hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the

---

[10] In recommending remand, I have considered whether it should be solely for purposes of the calculation of benefits. Reversal and remand for the calculation of benefits is only warranted "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision *Rosa*, 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)). In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

pleadings be GRANTED, the Commissioner's determination of no disability VACATED, and the matter REMANDED for further consideration by the agency consistent with this opinion.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

/s/ David E. Peebles
David E. Peebles
U.S. Magistrate Judge

Dated:   July 30, 2013
         Syracuse, New York